AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Rutilo Uriostegui-Mojica<br><br>*Defendant(s)* | Case No. 8:18-mj-1727-JSS |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 8, 2018__ in the county of __Hernando__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1326(a) | Alien found in the United States without permission after removal or deportation. |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Christopher Cory, U.S. Border Patrol
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/9/18

_____
*Judge's signature*

City and state: Tampa, Florida

JULIE S. SNEED, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Border Patrol Agent Christopher Cory, being duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1. I have been employed as a United States Border Patrol Agent with the United States Border Patrol since July 21, 2014. Since June 24, 2018, I have been assigned to the United States Border Patrol Station in Tampa, Florida as a Border Patrol Agent.

2. In my capacity as a Border Patrol Agent, I am charged with enforcing U.S. immigration laws, both administrative and criminal. I am a federal law enforcement officer with the authority to execute arrest warrants and search warrants under the authority of the United States.

3. I submit this affidavit in support of a criminal complaint charging Rutilo Uriostegui-Mojica ("**URIOSTEGUI-MOJICA**"), a native and citizen of Mexico, with being an alien found in the United States without permission after removal or deportation, in violation of 8 U.S.C. § 1326(a). The statements contained in this affidavit are based on my personal knowledge and experience, and reliable information relayed to me by other law enforcement officers. Because of the limited purpose of this Affidavit, I have not included each and every fact known to me. I have included only those facts that I believe are necessary to establish probable cause supporting the requested complaint.

## PROBABLE CAUSE

4.     On August 8, 2018, Border Patrol Agent Robert Vadasz was conducting highway interdiction operations on Interstate 75 near Brooksville, Florida. He was patrolling in full rough duty uniform and operating in a fully marked Border Patrol Chevrolet Tahoe. He was parked in the center median near mile marker 318, observing southbound traffic on I-75.

5.     At approximately 9:30 a.m., Agent Vadasz saw a tan 2007 Chevrolet Tahoe bearing Texas registration traveling southbound on I-75. As the vehicle passed his stationary position, he saw that the vehicle was closely following another Texas-plated vehicle. Agent Vadasz pulled from his stationary position to further observe the driver of the vehicle and its occupants.

6.     When Agent Vadasz pulled onto the interstate and began to catch up with the Tahoe, the Tahoe's driver dropped his speed greatly and immediately pulled to the center lane. Agent Vadasz confirmed the Tahoe's Texas license plate number as FVG 1597. Agent Vadasz also saw that the registration sticker on the license plate had been scratched off.

7.     Agent Vadasz pulled alongside the Tahoe's driver's side so that he could see the driver. All of the Tahoe's windows were heavily tinted, but the driver's window was completely open. Agent Vadasz could see that the driver appeared to be a Hispanic male in his twenties with short hair. The driver appeared to be extremely nervous due to the presence of Agent Vadasz's marked Border Patrol

vehicle. Specifically, the driver appeared very tense, sitting upright and rigid in the driver's seat and looking straight ahead. Although Agent Vadasz drove down the highway parallel to the Tahoe for at least a full minute, the Tahoe's driver never changed this position and never even looked over at Agent Vadasz or acknowledged his presence in his marked Border Patrol vehicle right next to him. Agent Vadasz again positioned himself behind the Tahoe to complete records checks and continue to observe the Tahoe.

8. Further records checks revealed that the Tahoe's registered owner had no issued driver's license in Texas, and no record of the registered owner could be found in any related database. In my training and experience, this is consistent with vehicles registered to illegal aliens.

9. While following the Tahoe from behind, Agent Vadasz saw significant movement in the Tahoe's front seat area. He again pulled alongside the Tahoe's driver's side, but this time he saw a female with long hair driving the vehicle. It was clear that the occupants had switched drivers while traveling down I-75.

10. After following the vehicle for approximately 19 miles and generating reasonable suspicion that the Tahoe contained illegal aliens, Agent Vadasz activated his emergency equipment and conducted a vehicle stop. The Tahoe pulled to the shoulder of I-75 just south of the 299 mile marker near Brooksville, Florida. This area is located within Hernando County and within the Middle District of Florida.

3

11. Agent Vadasz approached the vehicle and identified himself as a United States Border Patrol Agent. Four people were in the Tahoe, including the female driver, an adult male in the front passenger seat, and two children. Agent Vadasz, who speaks Spanish,[1] questioned the Tahoe's occupants concerning their citizenship. The adult male from the front passenger seat told Agent Vadasz that his name is Rutilo Uriostegui-Mojica ("**URIOSTEGUI-MOJICA**") and that he is a Mexican citizen. **URIOSTEGUI-MOJICA** also gave Agent Vadasz a Mexican government identification bearing his photograph. **URIOSTEGUI-MOJICA** was the man that Agent Vadasz saw driving the Tahoe the first time he pulled alongside it on the highway.

12. Upon questioning, **URIOSTEGUI-MOJICA** admitted that he is a citizen and national of Mexico illegally present in the United States. **URIOSTEGUI-MOJICA** further admitted that he is illegally present in the United States after illegally entering the United States on foot near McAllen, Texas on an unknown date in September 2017.

13. Records checks conducted roadside revealed that immigration authorities have apprehended **URIOSTEGUI-MOJICA** on at least three occasions. Records also revealed that **URIOSTEGUI-MOJICA** had been previously assigned Alien Registration # 208 971 676 and FBI # 76636EH0.

---

[1] All conversations referenced herein took place in Spanish.

4

14. Further records checks revealed that **URIOSTEGUI-MOJICA** was previously ordered removed by an immigration judge on March 31, 2017 in Prairieland, Texas. **URIOSTEGUI-MOJICA** was originally deported from the United States on April 5, 2017 through Del Rio, Texas. **URIOSTEGUI-MOJICA** was again apprehended on April 8, 2017 and ultimately convicted of being an alien found in the United States without permission after removal, in violation of 8 U.S.C. § 1326 in Case No. 3:17-cr-797 in the U.S. District Court for the Western District of Texas. That court sentenced **URIOSTEGUI-MOJICA** to time served on August 3, 2017, and authorities removed him from from the United States on August 15, 2017.

15. Agent Vadasz arrested **URIOSTEGUI-MOJICA** and transported him to the Tampa Border Patrol Station for further processing using the e3/IDENT and NGI Systems. At the station, Agent Vadasz read **URIOSTEGUI-MOJICA** his *Miranda* rights, which I personally observed. **URIOSTEGUI-MOJICA** waived his rights and chose to answer questions without having an attorney present.

16. During post-*Miranda* questioning, **URIOSTEGUI-MOJICA** admitted to being a citizen and national of Mexico illegally present in the United States. He admitted that he is illegally present in the United States after illegally entering the United States on foot near McAllen, Texas on an unknown date in September 2017. **URIOSTEGUI-MOJICA** further admitted that he has been previously ordered removed by an immigration judge and to being deported from the United States on

5

multiple occasions. He also admitted to reentering the United States on this occasion of his own free will and being aware that he was violating federal law by illegally reentering the United States.

17. Authorities took **URIOSTEGUI-MOJICA's** fingerprints and submitted them through the Integrated Automated Fingerprint Identification System ("IAFIS"), comparing them with those taken prior to his removal from the United States. That analysis confirmed that they were the same person.

18. No information exists in **URIOSTEGUI-MOJICA's** Alien File or computer databases indicating that he either requested or received permission from the Attorney General, the Secretary for the Department of Homeland Security, or any other immigration official to reenter the United States after his previous deportation.

## CONCLUSION

19.     Based on the foregoing information, I respectfully submit that probable cause exists to believe that **URIOSTEGUI-MOJICA** is a citizen and national of Mexico and is an alien found in the United States without permission after removal or deportation, in violation of 8 U.S.C. § 1326(a).

Christopher Cory
United States Border Patrol

Sworn to and subscribed before me
this _9_ day of August 2018 in Tampa, Florida.

JULIE S. SNEED
United States Magistrate Judge

7